Levi & Korsinsky

33 Whitehall St., 27th Floor
New York, NY 10004

500 Fifth Avenue, 42nd Floor
New York, NY 10010

T: 212-363-7500 | F: 212-363-7171
www.consumer.zlk.com

Mark S. Reich | mreich@zlk.com

August 6, 2026

***VIA ECF***

Honorable Mary Kay Vyskocil, U.S.D.J.
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 18C
New York, NY 10007-1312

**Re: *Sorkin v. Fortune Media (USA) Corporation*, Case No. 1:26-cv-03772-MKV; Plaintiff's Response to Defendant's Request for Pre-Motion Conference**

Dear Judge Vyskocil,

This firm represents Plaintiff Adam Sorkin. Pursuant to Rule 4(A)(i) of Your Honor's Individual Rules of Practice in Civil Cases, Plaintiff provides his response to Defendant's Request for a Pre-Motion Conference (ECF No. 15), wherein Defendant seeks leave to file a motion to compel arbitration.

The Complaint (ECF No 6) alleges that Defendant operates a website, https://www.fortune.com (the "Website"), through which Defendant publishes, *inter alia*, business news, pre-recorded videos, and financial reporting. Compl. ¶ 2. Plaintiff alleges that the Website displays a privacy preferences interface (colloquially, a cookie banner or privacy banner) which represents that users' data will only be shared and/or sold with their affirmative consent. *Id.* at ¶¶ 4-5. However, the Website places and transmits cookies and other third-party tracking technologies capable of transmitting users' data (the "Tracking Tools") the moment users visit the Website, before users can affirmatively consent to the sale/sharing of their personal data. *Id.* at ¶ 3. Even after users affirmatively reject the sale/sharing of their data, the Website continued to utilize and deploy certain Tracking Tools, which transmit users' data to the advertising, social media, and analytics companies that designed and operate the Tracking Tools (the "Tracking Entities"[1]). *Id.* at ¶¶ 6-7. Plaintiff alleges that he maintained an account with the Website via Gmail, providing his email address in exchange for access to news from the Defendant's Website. *Id.* at ¶ 17 Plaintiff alleges that he accessed the Website to read articles and watch videos and that, as a result, his personal data was intercepted, collected, transmitted, and used without his consent. *Id.* Plaintiff alleges that Defendant's conduct violated the federal Wiretap Act, 18 U.S.C. § 2510, et seq., the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq., and common law.

Defendant bears the burden of showing that a valid arbitration agreement exists and that the dispute at issue is within the scope of the agreement. *See Martinez v. GAB.K, LLC*, 741 F.

[1] Plaintiff alleges that the Tracking Entities include Meta, Piano, Google, and The Trade Desk. Compl. ¶¶ 13, 67-140.

Supp. 3d 26, 32 (S.D.N.Y. 2024). Where, as here, the alleged arbitration agreement is part of an internet contract (i.e., Defendant's Terms of Use ("Terms")[2]), Defendant must establish that Plaintiff was on notice of Defendant's Terms. *See Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 30-31 (2d Cir. 2002). Defendant asserts that Plaintiff's claims are subject to arbitration because "Plaintiff alleges that he created an account with Defendant" and that Defendant's "records reflect that, on January 15, 2026, Plaintiff created an account through Google by selecting "Continue with Google." Def.'s Ltr. at 2. Defendant provides a figure depicting the alleged account sign-up screen that was shown to Plaintiff. *Id.* However, Defendant's Letter does not assert or show that the figure provided depicts the account sign-up flow at the time Plaintiff created his account. Defendant's Letter fails to explain what "records" conclusively show the date of Plaintiff's account creation and fails to provide said records. Without more, Defendant's prospective motion is fatally flawed. At a minimum, Plaintiff would be entitled to discovery into arbitrability because the existing record is and would be insufficiently developed to resolve whether the parties formed a valid agreement to arbitrate. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 103-04 (2d Cir. 2022). Assuming *arguendo* that Defendant can proffer their purported records and establish their provenance, Defendant still cannot compel arbitration of Plaintiff's claims based on the figure provided. The figure is neither a clickwrap nor browsewrap,[3] but rather a "hybrid" of the two, sometimes referred to as a sign-in wrap. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235-36 (2d Cir. 2016). In *Nicosia*, the Second Circuit, analyzing a sign-in wrap, reversed the district court's finding that Amazon's order page provided sufficient notice of its arbitration clause. The court found that the critical sentence (i.e., the mechanism to manifest assent) was not bold, capitalized, or conspicuous in light of the whole webpage; the page contained between fifteen and twenty-five links in at least four font sizes and six colors; and the presentation of terms was not directly adjacent to the 'Place Your Order' button so as to indicate that a user should construe clicking as acceptance. *See Nicosia*, 834 F.3d at 236-37. Such is the case here.

Notwithstanding that Defendant does not represent that it has provided the entire page depicting the sign-in wrap—thereby undermining the Court's ability to assess the totality of the webpage, its clutter, or additional proximate hyperlinks—the critical sentence (i.e., "By creating an account or signing in using the methods below, you agree to Fortune's Terms of Use and Privacy Policy.") was not bold, capitalized, or conspicuous. Indeed, the font size is smaller than any other type font in the figure, the critical sentence is insulated from, or not directly adjacent to, the "Continue" button (underneath the type box where a user would input their email address to sign in or create an account), and the critical sentence does not indicate that progressing via the three alternative buttons (labeled "Continue with Google," "Continue with Apple," and "Continue with Facebook," respectively) would effect the creation of an account, sign a user into the Website,

[2] *See* Def.'s Ltr at 2-3.

[3] "[A] 'clickwrap' agreement…typically requires users to click an 'I agree' box after being presented with a list of terms or conditions of use. Clickwraps force users to 'expressly and unambiguously manifest either assent or rejection prior to being given access to the product.' In contrast, "browsewrap" agreements involve terms and conditions posted via hyperlink, commonly at the bottom of the screen, and do not request an express manifestation of assent." *Nicosia*, 834 F.3d at 233 (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402–03 (2d Cir. 2004); *Specht*, 306 F.3d at 31-32).

and/or subject that user to the Website's Terms.[4] Based on the foregoing, even if Defendant can show that Plaintiff selected the "Continue with Google" button (which it cannot), the mechanism with which Plaintiff interacted is insufficient to show his notice of or manifestation of assent to be bound by the Website's Terms.

Defendant's Letter cites four cases to argue that inquiry notice is sufficient to show manifestation of assent. *See* Def.'s Ltr. at 3 (citing *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 283-84 (E.D.N.Y. 2024); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73-74 (2d Cir. 2017); *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 370 (E.D.N.Y. 2025)). But whether inquiry notice *can* establish assent is not in dispute; whether Defendant's Website established inquiry notice is disputed. Indeed, the cases cited by Defendant reinforce the principle that inquiry notice turns on reasonable conspicuousness in the context of the totality of the webpage. And, importantly, *Hu*, *Edmundson*, *Meyer*, and *Ziboukh* are factually distinguishable from the case at bar. *Hu* and *Ziboukh* involved account registrations via a Temu mobile phone application sign-in wrap, which occupied an entire uncluttered page, and a 'critical sentence' that accurately described the mechanism for manifesting assent, which was directly coupled to the button that effectuated it. *See Hu*, 779 F. Supp. at 274, 289-91; *Ziboukh*, 795 F. Supp. at 362, 391. Like *Hu* and *Ziboukh*, the court's analysis in *Edmundson* primarily focused on a Klarna application widget's sign-in wrap, which presented an uncluttered screen, a single button to click, and placed the relevant terms immediately adjacent to the button. *See Edmundson*, 85 F.4th at 705-07. Similarly, *Meyer* analyzed a sign-in wrap as part of the registration process for the Uber mobile phone application, which was presented on an uncluttered screen, with a single button to click, and placed the relevant terms immediately adjacent to the button. *See Meyer*, 868 F.3d at 70-71, 75-76, 78. Here, notwithstanding the existing deficiencies cited above, the Court cannot assess the conspicuousness of the Website's notice in light of the whole page, because Defendant produced only a partial figure. And, in all events, Defendant's exemplar figure supplies no critical sentence tying the "Continue with Google" button to assent and decouples that mechanism from the notice. Thus, Defendant's reliance on *Hu*, *Ziboukh, Edmundson*, and *Meyer* is unavailing.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's application for leave to file a Motion to Compel Arbitration; or, in the alternative, convert the pre-motion conference into a scheduling conference for limited discovery into arbitrability.

Respectfully submitted,

Mark S. Reich

[4] This is the precise defect that led the court in *Smith v. Whaleco Inc.*, 741 F. Supp. 3d 1104, 1111-12 (W.D. Okla. 2024)—discussed in *Hu*, 779 F. Supp. 3d at 291–92 (cited by Defendant)—to hold that the screen reached by clicking "Continue with Google" failed to provide notice, because nothing informed the user that proceeding through Google would signify acceptance of the defendant's terms. *Id.; accord Eakins v. Whaleco Inc.*, 721 F. Supp. 3d 1252, 1258-60 (W.D. Okla. 2024).